# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHSETTS

| | |
|---|---|
| JOHN J.E. MARKHAM, II, and ELIZABETH L. READ,<br><br>Plaintiffs,<br><br>vs.<br><br>CITIMORTGAGE, INC.,<br><br>Defendant. | Civil No. _____<br><br>**COMPLAINT:**<br><br>1. **FOR DECLARATORY RELIEF;**<br>2. **TO QUIET TITLE;**<br>3. **FOR MONEY DAMAGES FOR MISREPRESENTATIONS, BAD FAITH, AND UNJUST ENRICHMENT**<br>4. **FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING** |

## SUMMARY OF THIS ACTION

1.  Plaintiffs bring this action against Citimortgage, Inc. ("Citimortgage") seeking a declaration from this Court that Citimortgage (i) is not, despite its claims to the contrary, the holder of a certain promissory note made by plaintiffs in 2006, and (ii) does not have any rights under the mortgage filed on plaintiffs' property to secure payments under that note. Plaintiffs also seek to quiet title to their property by an order removing the mortgage filed by Citimortgage on that property upon the ground that this mortgage has no further legal effect since the note it secured was sold by Citimortgage. Finally, plaintiffs seek damages for Citimortgage's wrongful acceptance of payments on the note after Citibank had been paid in full on it and for other

1

wrongful conduct, threats, and injury to plaintiffs through false claims that it still owned the note when it did not.

## THE PARTIES, JURISDICTION, AND VENUE

2.  This Court has subject matter jurisdiction under 28 U.S.C. §1332(a)(2) (diversity of citizenship) because, as more fully stated in paragraphs 4 and 5 below, plaintiffs are citizens of the Commonwealth of Massachusetts, Citimortgage is a citizen of a state other than Massachusetts, and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs. Alternatively, because this action seeks declaratory relief, this Court has jurisdiction under 28 USC §2201.

3.  Venue is proper in this District under 28 U.S.C. §1391 because the *situs* of the property at issue in this case is located in Middlesex County, Massachusetts within this District and because a substantial part of the events giving rise to the claims made in this action occurred in this District.

4.  Plaintiffs are both citizens of Massachusetts, and domiciled in Watertown, Middlesex County, Massachusetts, within this judicial district.

5.  Defendant Citimortgage is a corporation organized under the laws of the state of Florida, with its principal place of business in O'Fallon, Missouri.

## FACTS RELATING TO ALL COUNTS

**The Debt Pools**

6.  There exists a certain investment entity known as a mortgage backed security pool, which is hereinafter referred to as the "debt pool." These debt pools are registered with the United States Securities and Exchange Commission (the "SEC"). They raise large investments of cash from investors and then use that cash to buy loans from banks or other commercial lenders

(hereinafter "banks"), throughout the United States. The overwhelming majority of the loans purchased by these debt pools are home loans, meaning loans made by borrowers to finance either the purchase or the construction of their homes, or to refinance existing loans on their homes.

7. When the borrower initially borrows the money involved in one of these loans, he or she signs a promissory note with the lending bank promising to pay the money back in installments, usually paid monthly over a term of years, and also executes a mortgage which allows the bank to foreclose on the property involved if the borrower does not pay the loan as agreed. These loans are hereinafter sometimes referred to as "installment loans."

8. Once the bank has made the installment loan, it frequently sells the rights to the loan either directly or through an intermediary to a debt pool which thereafter is entitled to receive all the payments from the borrower as those payments become due. The bank is paid in full on such a sale, after which it is no longer the holder of the note and has no further interest in the mortgage executed by the borrower to secure the loan payments under the note. The borrower is not informed of the sale of its loan by the bank to the debt pool and usually continues to pay the loan installments to the bank, which in turn passes them on to the debt pool after taking a collection fee.

9. Under the tax laws, installment loans purchased by these debt pools enjoy a tax advantage, namely, that all of the installment payments made by the borrower to the debt pool after the loan is purchased by the debt pool are not taxed. To qualify for this tax exemption, however, the debt pool must purchase the loan involved outright and own it in its entirety; and the bank which sells the loan to the debt pool must relinquish all right and title it had in the loan. Thereafter the debt pool cannot relinquish ownership of the loan except by a full sale to someone

for a value specified in the documents governing the debt pool. Any transfer of the loan from the debt pool for any lesser sum is invalid.

      10.      Once the installment loan referred to above is owned by the debt pool, it issues certificates or bonds, called "Mortgage Backed Securities" to the investors who invested the money used to make these installment loan purchases from the banks. These Mortgage Backed Securities entitle the investors to receive dividends from the debt pool which are paid from the proceeds of the installment loan payments made by borrowers on the loans purchased by the debt pool. Usually, these installment payment are not made directly to the debt pools by the borrowers, who are not aware that their loan has been sold into a debt pool. Instead they are made to the original lender, or to another bank which took the loan from the original lender and then sold to the debt pool, which then pays the proceeds over to the debt pool after taking a fee for collecting the installment from the borrower.

      11.      When a bank or other lender has lent money to a homeowner, and then the bank or other lender thereafter sells the loan involved to a debt pool, the bank or other lender has been paid on that loan in full and has no right to the loan, is not the holder of the note evidencing the loan, and has no right in the mortgage securing the loan.

**Plaintiffs' Purchase of Their Home**

      12.      Plaintiffs are the owners of a house and real property (their home) located in Watertown, Middlesex County, Massachusetts where plaintiffs have lived since purchasing this home in November, 2000. When they purchased their home, plaintiffs made a substantial down payment and borrowed the balance of the purchase price from Cambridge Savings Bank. The promissory note plaintiffs made to Cambridge Savings Bank in connection with this loan is

4

secured by a first mortgage filed with the Middlesex South District Registry of Deeds. As of the date hereof plaintiffs are current on this loan obligation to Cambridge Savings Bank.

**Plaintiffs' Loan from Citimortgage**

13.   On or about April 20, 2006, Plaintiffs borrowed money from a lender called Mortgage Master, Inc. and in connection with that loan executed a Promissory Note (hereinafter "the note") and a mortgage in favor of Mortgage Master, Inc., which mortgage was in second position behind the mortgage owned by Cambridge Savings Bank.

14.   On May 2, 2006 Mortgage Master assigned the right to collect payments on this loan to defendant Citimortgage which, since that assignment, has been the entity asserting the right to be paid monthly payments on this loan. Citimortgage has, since that date, asserted that is the holder of the note evidencing this loan and that its rights as holder are secured by the second mortgage on plaintiffs' home such that it has the right to foreclose on the mortgage if the note is not paid as required.  From the time Citimortgage was assigned plaintiffs' loan and for the next 42 months, plaintiffs paid Citimortgage each monthly installment payment under this loan on time, as agreed, paying a total of approximately $111,313.02, of which 101,107.64 was interest.

15:   On information and belief and based on the facts stated below Citimortgage no longer owns the loan referred to in the preceding paragraph, but rather has sold the loan into a debt pool in the manner referred to in paragraphs 6 through 11 above. As of the date of that sale, Citibank was paid in full for the loan by the debt pool and therefore no longer owns the loan, is not the holder of the note evidencing the loan, and has no rights to foreclose on the mortgage securing the loan.

16. The date of the sale by Citimortgage of plaintiffs' loan to a debt pool is not known to plaintiffs who were not informed when that sale occurred.

17. Commencing in or about the fall of 2009, plaintiffs heard and read from various sources that many of the large lending institutions, including Citimortgage, no longer owned the loans they had with homeowners such as plaintiffs because these lenders, including Citibank, had sold many millions of these loans to debt pools in the manner described in paragraphs 6 through 11 hereof. Press accounts surfaced reporting legal disputes over who actually owned the loans that had been assigned to these debt pools, and there were various court cases reporting that banks and their lawyers had been found to have fabricated claims that the banks still owned certain of these loans while the truth was that the banks had sold the loans involved to debt pools, had been paid in full, and thus were not the proper party for the homeowner-borrowers to pay on the loans, nor the proper party to foreclose on any mortgage securing these loans.

18. Plaintiffs, hearing and reading the accounts and the reported cases referred to above, became concerned that they may not be paying the actual owner of their loan because Citimortgage may quite likely have sold that loan into a debt pool. As plaintiffs contemplated a potential sale of their home, these reports also made them concerned about their ability to deliver clear title to a new purchaser. They were also concerned that at some point another entity, a debt pool, might attempt to claim ownership of their loan and itself attempt to collect on it or to attempt to foreclose on the mortgage.

19. Therefore, plaintiffs contacted Citimortgage to discuss the status of their loan and was initially told that Citimortgage would not discuss the loan status because plaintiffs were paying their loan obligations in a timely manner and unless they fell behind on payments Citimortgage would not discuss the loan with them. Accordingly, in or around December 2009

and continuing through 2010, plaintiffs stopped making timely loan payments in order to induce Citimortgage to engage in meaningful discussions regarding the status of their loan. Since that date plaintiffs have repeatedly attempted to learn through telephone calls with Citimortgage whether Citimortgage still owns plaintiffs' loan, whether it has the right to collect payment thereon, and whether it still has standing under the mortgage securing that loan.

20. Citimortgage has responded in each of the phone conversations, all of which it states it has taped, with various actions or responses which, collectively, indicate that it does not any longer own the plaintiffs' loan, having sold it into a debt pool. Throughout the winter and spring of 2010 Citimortgage representatives contacted plaintiffs by letter and by telephone, often on a daily basis. When plaintiffs explained to the Citibank representative on the call the status of the matter and the need for documentation about who actually owned plaintiffs' loan, plaintiffs would be transferred to "someone who could assist" but on more than one occasion, the line would simply go dead. In other telephone calls between Citimortage and the plaintiffs, telephone calls that Citimortgage stated were recorded and advised that the recordings would be preserved, Citimortgage responded to plaintiffs' requests for proof that Citimortgage still owns plaintiffs' loan with the following inconsistent explanations, all by persons employed by or on behalf of Citimortgage and who were, when speaking to plaintiffs, or either of them, speaking on behalf of Citimortgage while acting within the course and scope of their duties:

(i) On several occasions, a Citimortgage employee told one of the plaintiffs, or both, in a telephone call that the loan was still with Citimortgage and had not been sold to a debt pool or otherwise but that plaintiff would not be allowed to see the original note evidencing that loan because it had been lost;

(ii) On other occasions, a Citimortgage employee told one of the plaintiffs, or both of them, in a telephone call that the loan was still with Citimortgage and had not been sold to a debt pool or otherwise but that plaintiff would not be allowed to see the note because the note was in a warehouse and it would be too difficult to retrieve;

(iii) On other occasions, a Citimortgage employee told one of the plaintiffs or both of them in a telephone call that the loan was still with Citimortgage and had not been sold to a debt pool or otherwise but that plaintiff would not be allowed to see the note because a copy of the note evidencing the loan was as good for all purposes as the original and thus Citimortgage would send a copy of the note and that a copy should be all the proof that was needed. In the spring of 2010, in response to plaintiffs' requests, Citimortgage mailed a copy of the note to plaintiffs, representing that it was a true and correct copy of the note, including all endorsements, as then constituted. The copy of the note sent to plaintiffs by Citimortgage showed only the endorsement from Mortgage Master, Inc. to Citimortgage, Inc. in May 2006, and carried no further notation or indication that the note had been sold into a debt pool or otherwise. Indeed the copy of the note was only one-sided and thus would not allow plaintiffs to determine whether there were any markings on the back pages, nor, because it was a copy, whether there were any indications that there had been any allonge or other endorsement stapled or otherwise attached to the original, something that would have occurred had the loan been sold into a debt pool but which would be absent from the original note had it not been sold into a pool. Plaintiff was told by Citimortgage employees that this copy was just like the original in all respects even though for the reasons just stated it was not.

(21) Plaintiffs made clear to Citimortgage employees on many occasions that while a copy without all current endorsements was not sufficient, plaintiffs would be willing to travel to

wherever the original note was located so that they could see if it had any markings on it indicating that it had been sold. The employees from the bank repeatedly stated that a copy was sufficient and that plaintiffs would not be allowed to see the original, sometimes refusing access to it because it was lost, sometimes because it would be too difficult to retrieve, and sometimes because they simply stated that they did not have to show the original because a copy was sufficient. When plaintiff asked where the copy of the original had been made and offered to go to that location to see the original, employees refused to answer, saying on one occasion that they did not have to tell him, and on another occasion saying to plaintiff that his request to see the original was stupid since "you do not have to see the original of the Declaration of Independence to know it exists."

22.     On one occasion just after plaintiff had yet again telephoned Citimortgage to attempt to view the original of the note and thus learn whether it had been sold by Citimortgage, an employee of Citimortgage telephoned plaintiff and told plaintiff he was a supervisory employee and that he had heard that plaintiffs were asking to see the original of the note. When plaintiff replied that this was true, the employee stated as follows: "I have spoken with my supervisor about this and he wants to know what your position on payment would be if we told you that in fact we did not any longer own the note." Plaintiffs, or one of them, replied that he would make his position known clearly once they told him the truth. The supervisory employee said he would call back the next day. Neither that Citimortgage employee nor any other employee called back that next day or for a long period of time.

23.     Instead, another employee from Citimortgage's Texas office telephoned plaintiff's tax preparer and accountant and asked the accountant if plaintiffs had been honest on their tax returns, further explaining that Citimortgage wanted this information because plaintiffs

9

were in a dispute with Citimortgage over a loan. This telephone call was made by the Citimortgage employee without either the knowledge or the consent of either plaintiff. When plaintiff called the Texas office to speak with the employee who had made this unauthorized call to ask why it had been made, and, yet again, why Citimortgage would not let plaintiffs see the original note, and left a voice-mail message asking to be called back so that the employee could explain why she had made this unauthorized call, no employee ever called back to explain.

24. To date, and despite the many request plaintiffs have made to view the original note so that they can determine that it has not been endorsed over or assigned to someone else, Citimortgage has refused to show it to plaintiffs for the many and contradictory reasons they have given, as described above. Not content to deal directly with plaintiffs, Citimortgage referred collections of the note to law firms and debt collectors, none of which were ever able to provide documentary evidence of the right to collect on the note in question. Nevertheless, Plaintiffs were bombarded with calls, robocalls and letters over the course of several months. This has left plaintiffs without knowledge as to who owns their loan, if anyone still does, and whether they should be paying Citimortgage or someone else on the note. Moreover, because of Citimortgage's unwillingness to state unequivocally that they do not any longer own the note, nor show proof that they do by allowing plaintiffs to travel to where the original of it is being held, if Citibank still holds it, plaintiffs do not know whether there is in fact any second mortgage lien on their home because if Citibank has indeed sold the loan as plaintiffs believe, said mortgage would no longer be valid.

25. During one particular recorded conversation with a Citimortgage employee during which one plaintiff was again asking to see his original note, the Citimortgage employee again told plaintiff that he could not see the original. Plaintiff told the Citimortgage employee that were

Citimortgage ever to attempt to foreclose on the mortgage securing the loan involved, it would be required to show the original note so why, plaintiff asked the Citimortgage employee, would Citimortgage not show the note to plaintiff at that time, before any such foreclosure. In response the Citimortgage employee assured plaintiff that Citimortgage would not foreclose on the plaintiffs' home.

26. Notwithstanding the representations made by the Citimortgage employee as described in paragraph 25 above, in August of 2010 Citimortgage did commence an action in the Land Court Department of the Trial Court of the Commonwealth of Massachusetts to foreclose on plaintiffs' property, using the second mortgage as a basis for doing so. In doing so, it did not offer to show the original note but instead simply stated in an unsworn pleading that it was the "holder" of the plaintiffs mortgage. Moreover, Citimortgage never served plaintiffs with a copy of the papers it filed in the Land Court and never produced even a copy of the note, much less the original, to prove that it was the holder of the note with the right to foreclose on the mortgage securing the note. Citimortage never delivered to plaintiffs copies of the foreclosure papers it had filed with the Land Court. Instead, it sought court approval to provide notice through publication in a manner not calculated to reach plaintiffs. Citibank also falsely asserted in its papers filed with the Land Court that it had mailed the foreclosure notice of action to plaintiffs when it never had done so. While the foreclosure was pending, plaintiffs continued to be contacted by Citimortgage employees seeking to discuss loan modifications, though the Citimortgage employees making those did not inform plaintiffs that a foreclosure action was already pending.

27. In the papers filed by Citimortgage in the Land Court, even it did not state that it held plaintiffs note or that it was any longer the mortgagee. Instead it asserted that it was "one who

11

holds under the mortgage," an assertion meaning that Citibank no longer was the mortgagee, having itself sold the note and thus lost its rights as mortgagee.

28. After the foreclosure action was filed in the Land Court and plaintiffs had finally learned of its pendency through their own investigation, plaintiffs wrote a letter to the lawyers who had appeared as counsel for Citimortgage in that action and stated as follows, in pertinent part:

HARMON LAW OFFICES
PO BOX 610389
NEWTON, MASSACHUSETTS 02461-0389

**URGENT ATTENTION – FORECLOSURE ACTION Citimortgage, Inc. v. John J.E. Markham, II and Elizabeth Read; Miscellaneous No. 10 Misc. 436340**

Dear Attorneys:

I am an attorney and I am writing to you on behalf of myself and my wife, Elizabeth L. Read, to respond to the foreclosure action you have filed with the Massachusetts Land Court, as captioned above. Please deliver this letter promptly to the attorney in charge of this case in your office.

* * *

We know that Citimortgage no longer holds the note which forms the basis of its purported right to foreclose. It sold that note into a pool by a process now well-known as "securitization" and no longer has any right to or interest in said note. We set forth the history by which we have attempted to discuss this matter with Citimortgage and the deceptive and improper responses they have made to our simple requests that they provide proof that they are the holder of the note at this time. As you are undoubtedly aware, the Uniform Commercial Code defines "holder" in a very clear manner. Citimortgage is not the holder. The history follows. We are also enclosing with this letter a copy of the letter we wrote to Citimortgage's predecessor law firm, Lustig, Glaser & Wilson, PC, about this matter when they sought to file a collection action on the note. We have not heard from them since; Citimortgage seems to have sought your services to press their meritless and indeed fraudulent claim.

We have been at this for quite some time and we have received nothing but misstatements from Citimortgage. We took a second mortgage on our property borrowing money from Mortgage Master, Inc. in 2006. The note and mortgage involved were almost immediately assigned to Citimortgage. As the

records will indicate, we faithfully paid Citimortgage the first thirty three [43] payments when due, and never a day late. After reading about securitization and wondering whether we were paying the right party, we attempted to call Citimortgage to discuss our note. Elizabeth Read was the first caller and despite her repeated attempts, she was told that no one would speak to her about our note unless it was in default. Therefore, we stopped making payments on our mortgage obligation and, sure enough, Citimortgage started calling us about our default.

In those calls we attempted to ascertain whether Citimortgage remained the holder of our note, surely a fair question. This commenced in October, 2009 and we have now had an almost year-long history of attempting to work with Citimortgage on this matter. Specifically, we have repeatedly requested (in both telephone calls its representatives have made to us and in our separate telephone calls to it) that Citimortgage show us the original promissory note so that we can make sure that it is still the holder, that it has not already been paid, that we are not liable to someone else, and/or that the note has not been defaulted, declared written off, and paid by insurance, all of which affect our rights and obligations. We have indicated many times to Citimortgage representatives, in conversations that they have stated were tape-recorded, that under whatever conditions Citimortgage wishes to impose, we would travel to where the note is kept, if indeed Citimortgage still has it, so that we can see it and determine whether, as we have been informed by our research, it has been sold or otherwise disposed of and thus no longer belongs to Citimortgage.

To date Citimortgage has refused to allow inspection of the note, telling us variously that (1) it has it, but we cannot see it, (2) it does not have it but that makes no difference, (3) it is lost, (4) it is in a warehouse and thus too burdensome to produce, (5) that it makes no difference that it has been sold, (6) that a copy is as good as the original and (7) that it would not seek to foreclose on our house. These conflicting stories, over the course of many conversations which were said to be recorded, cannot possibly all be true. Citimortgage has thus made misrepresentations about all of this. It has also threatened to foreclose on our home, several times, and then said it would not do so. Now, it has filed a foreclosure action.

If it is no longer the note holder, as we believe, it obviously cannot foreclose and its threats to do so are a violation of law. Your foreclosure action is a fraud on the court if what we assert is true. Worse, Citimortgage even telephoned my accountant to ask questions about my financial affairs that are none of its business, involving my tax obligations. This call was a violation of law. It also came as I was pressing Citimortgage for the answer to the simple but central question of whether or not it still owns the note it seeks to collect. This response, calling my accountant, strongly reinforces that it does not hold our note as we have been informed.  * * *   Please contact me at my office at your convenience at the number set forth above so that we can discuss this matter.

13

29. The above quoted letter, sent by hand delivery, was never answered. Not one word of it was ever denied by these lawyers, acting as agents for Citimortgage, nor did anyone from Citimortgage ever communicate with plaintiffs any denial or disagreement with any of the assertions contained in this letter.

30. Thereafter, in or around October, 2010, plaintiff telephoned the law offices to which the above quoted letter had been sent to discuss the status of the underlying foreclosure action in the Land Court. Plaintiff was advised that Citimortgage had instructed the law firm to stop the foreclosure, and the attorneys would take no action on the order of notice received from the Land Court on or about October 7, 2010. Nevertheless, Citimortgage has advised credit reporting agencies that plaintiffs defaulted on this loan, thus defaming their credit. Credit reporting agencies also indicate that Citimortgage has written off the loan. Finally, the note and mortgage remain of record with the Middlesex South District Registry of Deeds, and a foreclosure action remains pending, thus clouding title and prohibiting plaintiffs from being able to sell the property.

## FIRST CLAIM FOR RELIEF
### (For Declaratory Relief)

31. Plaintiffs incorporate herein by reference the paragraphs hereinabove pleaded as if set forth in their entirety.

32 An actual controversy exists between plaintiffs and defendant Citimortgage regarding whether Citimortgage now is the owner or holder of plaintiffs' loan and thus has any rights under said loan or to the mortgage securing that loan. Defendant Citimortgage has claimed to have ownership of the loan and the right to foreclose on the mortgage. Conversely, for the reasons described above, plaintiffs contend that defendant Citimortgage has no right whatever in the plaintiffs' loan and no right to foreclose on the mortgage. Plaintiffs seek from

this Court a declaration that defendant Citimortgage has no interest in the plaintiffs' indebtedness, nor any rights under the mortgage and therefore has no lawful authority to foreclose on the plaintiffs' home and no lawful authority to collect on the note.

**SECOND CLAIM FOR RELIEF**
**(For an Order Quieting Title)**

33. Plaintiffs incorporate herein by reference the paragraphs hereinabove pleaded as if set forth in their entirety.

34. Because Citimortgage has sold plaintiffs' loan into a debt pool as alleged above, that sale of the loan extinguished any right and title Citimortgage had to the property and any interest it had in the mortgage involved. That mortgage now belongs to no person or entity. Yet it unfairly remains a cloud on the title to plaintiffs' home property, unfairly and unlawfully restraining the alienability of the property by the plaintiffs in a way which has damaged and continues to damage plaintiffs.

35. Accordingly, this Court should enter an order quieting title to the plaintiffs' home property ordering that the lien in the form of the mortgage purportedly in favor of Citimortgage is no longer valid, no longer in force, and declared null and void, and removed as a lien.

**THIRD CLAIM FOR RELIEF**
**(Misrepresentations as to Ownership)**

36. Plaintiffs incorporate herein by reference the paragraphs hereinabove pleaded as if set forth in their entirety.

37. Citimortgage's repeated attempts to take the plaintiffs' property by falsely asserting rights to the loan and mortgage which Citimortgage did not own, and which it knew it did not own, is fraud on its part. This fraud has involved the making of the following statements, among others, which statements were all made during telephone conversations to or from

plaintiffs home or cell phone numbers to or from Citimortgage employees, and these conversations occurred between November, 2009 and November, 2010, all at a time when Citimortgage knew that these statements were false when made and intending by these statements to fraudulently induced the plaintiff to make payments to Citimortgage which Citimortgage was not entitled to receive and to surrender plaintiffs' valuable rights in the property:

    (i)    Citimortgage employees told plaintiffs that Citimortgage never sold plaintiffs' loan;

    (ii)    Citimortgage employees told plaintiffs that Citimortgage still possessed the note evidencing the loan;

    (iii)    Citimortgage employees told plaintiffs that Citimortgage had lost the note evidencing the loan;

    (iv)    Citimortgage employees told plaintiffs that Citimortgage had the note evidencing the loan in a warehouse but that it could not be retrieved without much difficulty and thus would not be retrieved; and

    (v)    Citimortgage employees told plaintiffs that Citimortgage would not foreclose on the plaintiffs' home property when in truth and in fact Citimortgage did so.

These statements are all false because in fact Citimortgage had sold the plaintiffs note and well knew at the time it had made these statements that it no longer owned the loan.

    38.    In addition to the fraudulent statements described above, Citimortgage caused attorneys to file with the Commonwealth of Massachusetts Land Court Department of the Trial Court a Complaint in which it was falsely stated that Citimortgage was a holder of the mortgage

involved well knowing that it was not the owner and holder of that because it had sold the note and thus did not own any rights to the mortgage. By reason of these knowingly false representations, plaintiffs have been damaged in that they have been subjected to a publicly noticed foreclosure when such a foreclosure action should not have been filed, which has resulted in injury to their standing in the community and which has prevented plaintiffs from attempting to either sell or borrow on their home. Plaintiffs have also suffered the loss of clear title to their home and the costs of the actions which have been made necessary to establish their rights to the property.

39. In addition, from on and after the time that Citimortgage sold the loan to a debt pool, it no longer had any right to be paid by plaintiffs on the loan. Notwithstanding this, Citimortgage continued to accept and even induce monthly loan payments from plaintiffs by falsely asserting that the loan still belonged to Citimortgage and by failing to inform plaintiffs that the loan had been sold and no longer belonged to Citimortgage. To the full extent that Citimortgage received monthly payments from plaintiffs on the loan after that loan had been sold by Citimortgage, Citimortgage has been unjustly enriched and should account to plaintiffs for all that unjust enrichment and pay it over to plaintiffs, along with all other damages caused by Citimortgage's fraudulent representations.

40. In the event that the representations made by Citibank as referred to above were not knowingly false, they were negligently made and thus are negligent misrepresentations and Citimortgage is liable therefore in the same amount as if they had been knowingly and fraudulently made.

### FOURTH CLAIM FOR RELIEF
(Breach of Implied Covenant of Good Faith and Fair Dealing)

41. Plaintiffs incorporate herein by reference the paragraphs hereinabove pleaded as if set forth in their entirety.

42. The loan and mortgage agreements between plaintiff and defendant Citimortgage, as assignee from Mortgage Masters, contained an implied covenant of good faith and fair dealing.

43. After becoming assignee, Citimortgage impliedly promised to conduct itself in good faith and to deal fairly with plaintiffs. Defendants had a duty to perform their duties under the mortgage agreement with good faith and to deal fairly.

44. Defendants failed to perform their duties under the loan agreement evidenced by the note and mortgage in good faith by their conduct as alleged in the previous paragraphs of this Complaint, by making false statements, securing payments from plaintiffs to which Citimortgage was not entitled, by bringing a fraudulent foreclosure action, and by calling plaintiffs' accountant and seeking to induce him to violate plaintiffs' rights of privacy.

45. As a proximate result of defendants' breach on the covenant of good faith and fair dealing, plaintiffs have incurred damages in an amount to be proven at trial.

### PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray that this Court enter judgment as follows:

A. Declaring that Citimortgage lacks any interest in the plaintiffs' loan and that it cannot collect payments on the loan or to foreclose, or attempt to foreclose on the mortgage; and

B. Declaring that the mortgage is not a lien against the plaintiffs home property, ordering the immediate release of the mortgage of record, and quieting title to the property in

favor of the plaintiff and against defendant Citimortgage, and any other person or entity claiming by, through, or under Citimortgage;

  C. Entering judgment against Citimortgage for damages according to proof caused by the misrepresentations by Citimortgage that it owned plaintiff's loan, its bad faith and breach of the covenant of good faith and fair dealing, and for its unjust enrichment;

  D. For costs of suit and for attorneys fees; and

  E. For such other and further relief as the court deems just in the premises.

Dated: February 18, 2011

              RESPECTFULLY SUBMITTED

              MARKHAM & READ

              <u>John J.E. Markham, II</u>
              John J.E. Markham, II
              One Commercial Wharf West
              Boston, Massachusetts 02110
              Tel: (617) 523-6329
              Fax: (617) 742-8604
              Attorney for Plaintiffs
              Elizabeth L. Read and
              John J.E. Markham, II, pro se.